**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

24th Street Holdings LLC,

Plaintiff,

v.

BP Products North America Incorporated, et al.,

Defendants.

No. CV-25-00157-PHX-DWL

**ORDER**

In December 2022, 24th Street Holdings LLC ("Plaintiff") leased a parcel of real property to BP Products North America, Inc. ("Defendant"). Under the parties' lease agreement, Defendant was required to maintain insurance coverage, either through third-party insurance providers or via self-insurance. After a fire caused damage to the leased property, Plaintiff submitted a claim to Defendant and Defendant's insurance carrier. Defendant eventually informed Plaintiff it had exercised its right to self-insure and then rejected the claim.

In January 2025, Plaintiff initiated this action (Doc. 1), and in May 2025, Plaintiff filed a Second Amended Complaint ("SAC") (Doc. 23). The SAC asserted a breach-of-contract claim as well as tort claims for fraudulent misrepresentation, negligent misrepresentation, tortious breach of the implied covenant, and fraudulent concealment. (*Id.*) On January 12, 2026, the Court dismissed all four of the tort claims in the SAC but granted Plaintiff limited leave to amend ("the January 2026 Order"). (Doc. 32.)

Plaintiff has now filed a Third Amended Complaint ("TAC"), which purports to add

a new claim—for fraudulent inducement—that did not appear in the SAC. (Doc. 34.) Defendant has, in turn, moved to dismiss that new claim. (Doc. 37.) For the reasons that follow, the motion is granted.

## BACKGROUND

I. Relevant Factual Background

The parties are familiar with the facts of this case, which are set out in detail in the January 2026 Order. (Doc. 32.) The facts alleged in the now-operative pleading, the TAC (Doc. 34), remain largely the same. The Court thus provides only the following summary of relevant facts.

A. **The Parties And The Challenged Conduct**

Plaintiff "owns real property located at 10 North 24th Street in Phoenix, Arizona" (the "Subject Property"). (*Id.* ¶ 8.) On or about December 22, 2022, Plaintiff and Defendant entered into a written agreement (the "Lease Agreement"), "under the terms of which the Subject Property was to be leased by Plaintiff to Defendant[]." (*Id.* ¶ 9.)

In a series of negotiations leading up to the execution of the Lease Agreement, "Plaintiff requested and Defendant agreed that certain terms and provisions be added to the Lease Agreement." (*Id.* ¶ 10.) "Defendant[] agreed to obtain and maintain, at Defendant['s] own cost and expense, insurance coverage, including but not limited to Special Form Cause of Loss Insurance, covering the building, improvements, structures and fixtures at the Subject Property (the 'Subject Insurance') either through insurance providers or through self-insurance by Defendants throughout the term of the Lease Agreement." (*Id.*)

"Pursuant to Paragraph 11(d) of the Lease Agreement, Defendant[] had the express right to self-insure." (*Id.* ¶ 12.) The TAC alleges that "[t]his provision did not relieve Defendant[] of [its] obligation to provide coverage equivalent in scope and protection to the specified Special Form Cause of Loss insurance." (*Id.*) The TAC further alleges that "Plaintiff relied on representations made by Defendants during negotiations as incorporated into Paragraph 11 of the Lease Agreement." (*Id.*)

On or about January 20, 2023, a fire caused damage to the Subject Property. (*Id.* ¶ 13.) The TAC alleges that Plaintiff suffered substantial losses as a result of the fire, "including, but not limited to, property damage, repair costs, and other incidental damages." (*Id.* ¶ 15.) The TAC also alleges that Plaintiff "has incurred damages due to Defendant['s] unpaid loss obligations under the Lease Agreement." (*Id.* ¶ 16.)

After the fire, "Plaintiff submitted its claim to Defendant[] and Defendant['s] insurance carrier." (*Id.* ¶ 17.) Defendant, "through [its] conduct and through the conduct of [its] insurer, acknowledged receipt of the claim, and indicated the claim was being investigated." (*Id.*)

On or about May 18, 2023, Defendant sent Plaintiff a letter in which Defendant "for the first time changed [its] position, and began claiming that Defendant[] had allegedly exercised [its] right to self-insure under the Lease Agreement." (*Id.* ¶ 20.) The TAC alleges that "[t]his was contrary to all representations and communications that Defendant[] and Defendant['s] insurer had previously had with Plaintiff." (*Id.*)

The TAC alleges that Defendant "wrongfully took the position that [it] had no insurance obligations in connection with" the fire and that "[d]espite the clear language of the Lease Agreement, Defendant . . . rejected Plaintiff's claim for coverage under the insurance provision of the Lease Agreement, citing reasons that were unfounded and inconsistent with the terms of the Lease [Agreement]." (*Id.* ¶ 21.)

B. **The Lease Agreement**[1]

Section 11 of the Lease Agreement is titled "Indemnification; Insurance." (*Id.* at 33.) Section 11(b), titled "[Defendant]'s Insurance," provides that "[Defendant], at [Defendant]'s expense, shall obtain and maintain in full force and effect throughout the Term of this Lease . . . Special Form Cause of Loss insurance, on a replacement cost

[1] The Lease Agreement is attached as Exhibit A to the TAC. (Doc. 34 at 18-73.) Ordinarily, if a district court considers evidence outside the pleadings when ruling on a motion to dismiss, it must convert the motion into a motion for summary judgment and give the nonmovant an opportunity to respond. *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). A district court may, however, consider "documents attached to the complaint" in ruling on a motion to dismiss. *Id.* at 908. Because the Lease Agreement is described in detail in the January 2026 Order, the Court provides only a summary of the relevant provisions here.

valuation basis, agreed amount/no coinsurance, covering the building, improvements, structures and fixtures at the Premises." (*Id.*)

Section 11(d), titled "Self-Insurance," provides that "[n]otwithstanding anything contained in this Lease to the contrary, so long as the Tenant is [Defendant] (or any of its affiliates or subsidiaries), the provisions of any insurance coverages may be self-insured." (*Id.* at 35.)

II. Procedural History

On January 17, 2025, Plaintiff initiated this action. (Doc. 1.)

On March 5, 2025, after being ordered to file an amended complaint establishing relevant jurisdictional facts (Doc. 9), Plaintiff filed the First Amended Complaint (Doc. 10).

On May 12, 2025, after obtaining Defendant's written consent (Doc. 21), Plaintiff filed the SAC (Doc. 23). The SAC asserted six claims: (1) breach of contract; (2) fraudulent misrepresentation; (3) negligent misrepresentation; (4) breach of the implied covenant of good faith and fair dealing (insurance); (5) fraudulent concealment; (6) declaratory relief. (*Id.* ¶¶ 26-100.)

On June 10, 2025, Defendant moved to dismiss Counts Two through Five of the SAC. (Doc. 27.)

On January 12, 2026, the Court granted Defendant's motion to dismiss. (Doc. 32.) The Court also granted Plaintiff limited leave to amend should Plaintiff wish "to attempt[] to rectify the deficiencies identified in this order." (*Id.* at 19.)

On January 26, 2026, Plaintiff filed the TAC. (Doc. 34. *See also* Doc. 33 [redline].) The TAC asserts three causes of action: (1) breach of contract (Doc. 34 ¶¶ 23-30); (2) fraudulent inducement (*id.* ¶¶ 31-39); and (3) declaratory relief (*id.* ¶¶ 40-55).

On February 23, 2026, Defendant filed the pending motion to dismiss Count Two of the TAC. (Doc. 37.) That motion is now fully briefed. (Docs. 40, 41.)[2]

…

[2] Defendant's request for oral argument is denied because the issues are fully briefed and oral argument will not aid the decisional process. *See* LRCiv 7.2(f).

## DISCUSSION

I. Legal Standard

A. **Rule 12(b)(6)**

Under Rule 12(b)(6), "to survive a motion to dismiss, a party must allege sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[A]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." *Id.* at 1144-45 (citation omitted). However, the court need not accept legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678-80. Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. The court also may dismiss due to "a lack of a cognizable legal theory." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (citation omitted).

B. **Rule 9(b)**

Defendant asserts, and Plaintiff does not dispute, that a claim for fraudulent inducement is subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *See, e.g.*, *Corewest Res. LLC-FZ v. Gideon Grp. Inc.*, 2025 WL 3637447, *3 (D. Ariz. 2025) ("Fraudulent inducement claims are subject to the heightened pleading requirements of Rule 9(b)."); *AZG Enter. Inc. v. Honeywell Int'l Inc.*, 2025 WL 2480943, *3 (D. Ariz. 2025) ("Plaintiff's claim for fraud and/or fraudulent inducement may survive, although it is subject to a Rule 9(b) analysis.").

Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "To satisfy Rule 9(b), a pleading must identify 'the who, what, when, where, and how of the misconduct charged,' as well as what is false or misleading about the purportedly fraudulent statement, and why it is false."

*United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (cleaned up). *See also Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986) (under Rule 9(b), the plaintiff "must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation"). "[T]he circumstances constituting the alleged fraud [must] be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citations and internal quotation marks omitted).

II. Count Two (Fraudulent Inducement)

A. **Exceeding The Scope Of Leave To Amend**

At the outset, the Court notes that Plaintiff exceeded the limited scope of leave to amend granted in the January 2026 Order by purporting to assert a claim for fraudulent inducement in the TAC. The SAC did not contain a claim for fraudulent inducement—instead, it asserted tort claims for fraudulent misrepresentation, negligent misrepresentation, tortious breach of the implied covenant, and fraudulent concealment. The January 2026 Order identified various reasons why the allegations in the SAC were insufficient to support those four particular claims. The resulting grant of leave to amend "to attempt[] to rectify the deficiencies identified in this order" (Doc. 32 at 19) was thus only an opportunity to add new factual allegations that might support liability under Plaintiff's existing claims, not an invitation to assert new claims and legal theories. "In cases like this one, . . . where leave to amend is given to cure deficiencies in certain specified claims, courts have agreed that new claims alleged for the first time in the amended pleading should be dismissed or stricken." *DeLeon v. Wells Fargo Bank, N.A.*, 2010 WL 4285006, *3 (N.D. Cal. 2010).

It is true that the January 2026 Order contained a footnote stating that "Arizona courts, as well as federal courts applying Arizona law, are reluctant to apply the ELR [economic loss rule] to bar claims for fraudulent inducement." (Doc. 32 at 10 n.3.) But

this footnote was not, as Plaintiff contends, "a precise legal road map" authorizing Plaintiff to assert a new claim for fraudulent inducement in the TAC. (Doc. 40 at 1.) Instead, it was merely an observation regarding the scope of the ELR, offered in the context of analyzing Defendant's challenge to the fraudulent misrepresentation claim that appeared in the SAC.

Nothing prevented Plaintiff from asserting, in any of the three previous iterations of its complaint, a claim for fraudulent inducement. Thus, the dismissal of all of the tort claims asserted in the SAC was not an invitation for Plaintiff to assert, in the TAC, a new theory of tort liability that was available to Plaintiff from the inception of this case. *Cf. Westlands Water Dist. v. Firebaugh Canal*, 10 F.3d 667, 677 (9th Cir. 1993) ("[A] district court does not abuse its discretion in denying leave to amend where the movant has presented no new facts but only new theories and has provided no satisfactory explanation for his failure to develop the new contentions originally. . . . [T]he district court's discretion is particularly broad where the plaintiff has bypassed other opportunities to amend.").

B. **The Parties' Arguments**

Although the analysis could end there, the Court will, in an abundance of caution, proceed to the parties' arguments. Defendant argues that Count Two is subject to dismissal for at least three independent reasons. (Doc. 37 at 4.) The Court will focus on Defendant's second ground for seeking dismissal—Rule 9(b)—because, as discussed below, it is dispositive. Defendant argues that "Plaintiff does not plausibly allege all nine elements of fraud with particularity." (*Id.* at 7.) Specifically, Defendant argues that "Plaintiff makes only the vague and conclusory allegation the [Defendant] falsely promised that it 'had in place an operative risk-assumption structure,'" but "such a genericized allegation of the content of the alleged misrepresentation does not meet the particularity standard of Rule 9(b)." (*Id.*) Defendant also argues that Plaintiff "fails to plead certain elements entirely." (*Id.*) "For example, nowhere does Plaintiff allege that: (a) [Defendant] knew of the alleged misrepresentation's falsity; (b) Plaintiff was ignorant of the alleged misrepresentations' falsity; or that (c) Plaintiff had a right to rely on the alleged misrepresentations or any facts

in support of such allegations." (*Id.*, cleaned up.) Defendant further argues that "Plaintiff pleads 'materiality,' in a conclusory manner without identifying what made the alleged misrepresentations (such as they are) material to the Plaintiff's decision to enter the Lease [Agreement]." (*Id.* at 8.) Defendant also argues that Plaintiff does not "allege 'the identities of the individual speakers,' 'specify a particular date or time,' of the alleged misrepresentation, or 'provide information regarding where Defendant made its representations or under what circumstances." (*Id.*, citation omitted.)

In response, Plaintiff argues that "[t]he TAC alleges that [Defendant] made material representations through its authorized representatives directly involved in lease negotiations" and contends that, "[r]ead in context and with all reasonable inferences in Plaintiff's favor, this identifies Randall Young—[Defendant]'s Vice President, [Defendant]'s sole representative throughout all negotiations, and the individual who executed the Lease Agreement on [Defendant]'s behalf." (Doc. 40 at 6, emphasis omitted.) Plaintiff argues that "[t]he written representation is specific, which will be more specifically identified if needed in a fourth amended complaint" and further argues that Rule 9(b) is satisfied based on the allegations appearing in a proposed Fourth Amended Complaint ("FAC") that Plaintiff enclosed as an attachment to its response. (*Id.*)

In reply, Defendant argues that "Plaintiff's Response does not even attempt to defend the sufficiency of the fraudulent inducement claim as actually pleaded in the TAC." (Doc. 41 at 4.) Defendant argues that "virtually every argument Plaintiff makes in response to Defendant's Rule 9(b) challenge relies exclusively on 'allegations' contained in the [FAC]—which . . . is not an operative pleading and is not properly before this Court." (*Id.* at 4-5.) Defendant concludes that "by failing to identify any allegations in the TAC that cure the specific Rule 9(b) deficiencies Defendant identified in its Motion, Plaintiff concedes those deficiencies." (*Id.* at 6.)

C. **Analysis**

As an initial matter, to the extent Plaintiff is attempting to salvage the fraudulent inducement claim that appears in Count Two of the TAC by relying on factual allegations

that only appear in the proposed FAC, this approach is improper. *See, e.g.*, *Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss."); *Edwards v. PHH Mortg. Corp.*, 2015 WL 11120682, *2 n.7 (D. Ariz. 2015) ("The Court cannot consider new allegations in or exhibits attached to Edwards's response to the motion to dismiss."). Accordingly, the Court only looks to the TAC to determine whether Plaintiff has satisfied Rule 9(b).

Under Arizona law, a fraudulent inducement claim requires "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it be acted upon by the recipient in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely on it; [and] (9) the hearer's consequent and proximate injury." *Duncan v. Pub. Storage, Inc.*, 507 P.3d 509, 514-15 (Ariz. Ct. App. 2022).

As discussed, Rule 9(b) requires that the circumstances constituting fraud be alleged with particularity. Specifically, "[t]o satisfy Rule 9(b), a pleading must identify 'the who, what, when, where, and how of the misconduct charged,' as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Cafasso*, 637 F.3d at 1055 (cleaned up). The TAC does not come close to satisfying those requirements.

With respect to the "who" requirement, the TAC fails to identify "the identities of the individual speakers," *Arnold & Assocs., Inc. v. Misys Healthcare Sys.*, 275 F. Supp. 2d 1013, 1028 (D. Ariz. 2003), to whom the alleged misrepresentations can be attributed. The TAC alleges that "Defendant . . . through its authorized representatives involved in lease negotiations, made material representations to Plaintiff" (Doc. 34 ¶ 32) but never identifies those "authorized representatives." *See, e.g.*, *Mendez v. Bank of Am., N.A.*, 2013 WL 12130584, *4 (C.D. Cal. 2013) ("Mendez, moreover, has not alleged the identities of the BofA representatives who denied his loan modification application or who purportedly

made fraudulent statements in doing so."); *Hutson v. Am. Home Mortg. Servicing, Inc.*, 2009 WL 3353312, *9 (N.D. Cal. 2009) ("The complaint's references to an unnamed 'representative' of the Integrity Investment defendants and 'other buyers' are too vague to provide defendants with the notice contemplated by Rule 9(b)."); *Segal Co. (E. States) v. Amazon.Com*, 280 F. Supp. 2d 1229, 1231 (W.D. Wash. 2003) ("[T]he complaint's reference to certain 'representatives' of defendant is too vague to sufficiently identify the alleged perpetrators."); *Glen Holly Ent., Inc. v. Tektronix, Inc.*, 100 F. Supp. 2d 1086, 1094 (C.D. Cal. 1999) ("[A] pleader must identify the individual who made the alleged representation and the content of the alleged representation."). Although Plaintiff argues that "[r]ead in context and with all reasonable inferences in Plaintiff's favor," "authorized representatives . . . identifies Randall Young" (Doc. 40 at 6, emphasis omitted), the TAC nowhere mentions the name Randall Young. As far as the Court can tell, the only mention of Randall Young anywhere in the TAC is a signature buried in Exhibit A, the attached Lease Agreement, that identifies Randall Young as Defendant's vice president. (Doc. 34 at 50.) To hold that this somehow satisfies the "who" requirement of Rule 9(b) would be to stretch the rule to a nullity.

The TAC also fails to specify "when" the alleged misrepresentations were made, "where" the misrepresentations were made, or "how" the misrepresentations were made. Indeed, Plaintiff does not even attempt to defend the TAC as to these requirements. (*See generally* Doc. 40).

Finally, although "malice, intent, knowledge, and other conditions of mind may be alleged generally," *Van Go LLC v. Potts*, 2016 WL 4974968, *3 (D. Ariz. 2016), the TAC fails to even generally allege that Defendant had "knowledge of [the alleged misrepresentation's] falsity or ignorance of its truth," *Duncan*, 507 P.3d at 515. *Cf. Addington v. Bank of Am., N.A.*, 2013 WL 5888146, *2 (D. Nev. 2013) ("While Plaintiffs are correct that under Rule 9(b) intent can be generally averred . . . Plaintiffs must still allege plausible facts to support each element of their fraud claim.").

…

III. Leave To Amend

Defendant argues that "granting leave to amend would be futile because Plaintiff cannot cure these deficiencies by further amendment" and that "[t]his futility is further demonstrated by Plaintiff's inability to cure these pleading deficiencies in [the TAC]." (Doc. 37 at 10.) In response, Plaintiff "respectfully requests leave to file the [FAC]" attached as an exhibit to its response. (Doc. 40 at 13.) Plaintiff argues that the FAC adds "factual specificity," that "[l]eave to amend must be granted with 'extreme liberality,'" and that "this is the first time the Court evaluates the present-intent concealment theory." (*Id.* at 13-14, citation omitted.) In reply, Defendant argues that "[i]f Plaintiff was in possession of facts sufficient to support its fraud claim, the time to allege them was when it filed its [TAC], or at a minimum, when Defendant brought these deficiencies to Plaintiff's attention," and thus "Plaintiff should not be granted leave to amend again for a *fifth* bite at the apple." (Doc. 41 at 7.)

Plaintiff's amendment request is governed by Rule 15(a) of the Federal Rules of Civil Procedure, which "advises the court that 'leave [to amend] shall be freely given when justice so requires.'" *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). "This policy is 'to be applied with extreme liberality.'" *Id.* Thus, Plaintiff's amendment request should be granted unless "the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006). With that said, "[t]he district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Ascon Props., Inc. v. Mobil Oil. Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989). *See also Chodos v. W. Publishing Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) ("[W]hen a district court has already granted a plaintiff leave to amend, its discretion in deciding subsequent motions to amend is 'particularly broad.'") (citation omitted).

Leave to amend would be inappropriate here. Plaintiff has already been given multiple opportunities to amend its complaint and has now wasted an entire round of

motion practice by essentially failing to defend the TAC. To the extent Plaintiff argues "this is the first time" the Court has had an opportunity to address its fraudulent inducement claim, that argument is a nonstarter—the only reason why the sufficiency of this claim is being addressed for the first time now is because Plaintiff failed, without justification, to assert this claim in the three previous iterations of its complaint. Particularly under these circumstances, allowing further amendment would create undue delay (this case was initiated in January 2025, more than a year and a half ago) and be unfairly prejudicial to Defendant. The time has come to move past the pleading stage of this case.

Accordingly,

**IT IS ORDERED** that Defendant's motion to dismiss (Doc. 37) is **granted**.

Dated this 2nd day of September, 2026.

Dominic W. Lanza
United States District Judge